# United States District Court
# Northern District of Indiana
# Hammond Division

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 2:11-CR-202 JVB |
| JEROME SCOTT | |

## OPINION AND ORDER

Defendant Jerome has moved to suppress genuine and counterfeit currency and other personal property (DE 38), as well as his statement to Secret Service special agent Erik Petrovic (DE 39). The Court held an evidentiary hearing on the motions on September 10, 2012. For the following reasons, the motions are denied.

**A.     Background and Facts**

On June 29, 2011, East Chicago police patrolman Antoine West was dispatched to 3405 Lincoln Street, East Chicago, to investigate a reported disturbance between a boyfriend and girlfriend, the boyfriend having been identified as Jerome Scott. As West arrived at the scene, the dispatcher informed him that there were seven outstanding warrants for Scott's arrest and gave him a description of the car Scott was in. Another officer had arrived before West and pointed Scott out to West. Scott was sitting in the back seat of a car matching the description West had been given.

West asked Scott to step out of the car and informed him that he was under arrest for the outstanding warrants. West cuffed Scott with his hands behind his back and then searched him. He found an open white envelope in Scott's left pants pocket. He inspected the contents of the

envelope and found a large amount of cash, some of which West suspected was counterfeit. He put the envelope back in Scott's pocket and transported him to the East Chicago police department. At the police department West inventoried all the property in Scott's possession. He also notified his supervisor of his suspicion that the currency was counterfeit. They tagged the bills as evidence and placed them in an evidence locker.

United States Secret Service special agent Erik Petrovic testified about the search of Jessica Rumph's apartment at 3405 Lincoln Street, the address outside of which Scott was arrested. Rumph is Scott's girlfriend and the mother of some of his children. On June 30, 2011, Petrovic met other law enforcement officer at a Rally's restaurant in Hammond, where Rumph worked. The other officers were speaking with Rumph when Petrovic arrived. She had just signed a consent to search her apartment. Rumph's father joined her at Rally's and from there the officers followed them to Rumph's apartment. The officers searched the apartment for evidence of counterfeiting. They found a cutting board, a copier scanner, and a shoe box containing uncut notes. In a garbage can they found other notes in various stages of production. They seized these items, as well as ink cartridges, video game players, and a laptop computer.

On July 1, 2011, Petrovic went to the East Chicago police department to talk to Scott, who had been in custody since his arrest on June 29, 2012. Scott had met with another secret service agent, Lynch, the previous day. Lynch had advised Scott of his *Miranda* rights and had him sign an acknowledgment in which he waived his right to remain silent and to have an attorney at that time. Petrovic introduced himself to Scott and told him that he was under the same *Miranda* warning as when he spoke with Lynch. Petrovic orally repeated the *Miranda* warnings but did not have Scott sign a new acknowledgment and waiver. Scott agreed to talk to

Petrovic.

Petrovic told Scott that Jessica Rumph was in custody for possession of marijuana because an East Chicago police officer had discovered marijuana during the search of her apartment. Scott expressed his disbelief that Rumph had been arrested. He said would not speak further to Petrovic unless he were allowed to talk to Rumph first. Petrovic told Scott he would not be allowed to speak to Rumph but he would let Scott see her. The jailer brought Rumph to the threshold of the interview room. Scott became very emotional upon seeing her. He said he was sorry and said something about his children.

After Rumph was taken away, Scott cried. Then he told Petrovic that all the items that had been seized from Rumph's apartment were his. After Petrovic was finished questioning Scott, he asked Scott to make a written statement. In the statement, Scott admitted that the fake money that he was found with and the fake money, printer, and copier found at Rumph's home belonged to him. Scott was eventually indicted for counterfeiting.

Petrovic testified that he did not threaten Scott, Rumph, or any family members during the interview. He did not tell Scott he would get the maximum penalty if he did not cooperate. He did tell Scott that as long as he was a gentleman and told the truth, Petrovic would tell the U.S. attorneys that he was cooperative. The Court finds Petrovic to have been truthful in his testimony.

**B.     Discussion**

**(1)    *Suppression of Evidence***

Scott argues that the currency found on him at the time of his arrest should be suppressed

3

because it had no connection with the crime for which he was being arrested, failure to appear; because the search went beyond a search for weapons; and because his possession of the currency does not prove that he is guilty of any crime. According to Scott, after West determined that the envelope holding the currency contained no weapons, law enforcement should not have looked at the contents again. However, the permissible scope of a search incident to an arrest is much broader than Scott would allow.

A search incident to a lawful arrest is an exception to the Fourth Amendment's warrant requirement. *United States v. Robinson*, 414 U.S. 218, 224 (1973). An arresting officer has the unqualified authority to search the person of the arrestee. *Id.* at 225. Moreover, it is entirely reasonable for the officer to seize any evidence discovered in order to prevent its concealment or destruction. *Id.* at 226.

The reason for Scott's arrest is irrelevant, so long as it was a lawful arrest, as can be seen from *Robinson*. There the defendant was stopped and arrested for driving after revocation of his license. The arresting officer found a crumpled cigarette pack in the defendant's coat pocket when he patted him down. Inside the cigarette pack, the officer found capsules containing white powder, which he suspected was heroin. Later analysis confirmed his suspicion. *Id.* at 221–223. The Supreme Court concluded that the search did not offend the Fourth Amendment:

> The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search.

*Id.* at 235.

The Supreme Court went on to state that, having in the course of a lawful search come upon the cigarette pack, the officer was entitled to inspect it, and when the inspection revealed the suspicious capsules, he was entitled to seize them. *Id.* at 236.

This case is indistinguishable from *Robinson*. The Court can find no fault with West's search of Scott and seizure of the suspected counterfeit currency. Because the search and seizure involved no violation of Scott's constitutional rights, the evidence seized from him will not be suppressed. How far Scott's possession of the counterfeit currency goes to prove he produced it with the intent to defraud is a question for trial.

Scott's only argument concerning the items found in Rumph's apartment appears to be that the law enforcement officers would not have asked to search the apartment if they had not found the counterfeit currency. Since the seizure of the counterfeit currency was lawful, the consensual search of Rumph's apartment was not illegal.

**(2)** *Suppression of Statement*

The burden is on the government to prove, by a preponderance of the evidence, that a defendant's statements are voluntary. *United States v. Villalpando*, 588 F.3d 1124, 1128–29 (7th Cir. 2009). A statement is involuntary if it is the result of coercive police conduct. *United States v. Montgomery*, 555 F.3d 623, 692 (7th Cir. 2009). A statement is voluntary if, in the totality of the circumstances, it is "the product of a rational intellect and free will and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will." *United States v. Huerta*, 239 F.3d 865, 871 (7th Cir. 2001) (citations and internal quotations omitted). Factors relevant to a determination of the voluntariness of a

defendant's statement include the length of his detention; the nature of the interrogation; the inclusion of advice about constitutional rights; and the use of physical punishment, including deprivation of food or sleep. *Id.*

After considering these factors, the Court concludes that Scott's statements to Petrovic were voluntary. The only incident in this case that could be considered even remotely coercive is Agent Petrovic's accession to Scott's request that he be shown that Rumph was in police custody. The Court finds nothing coercive in allowing Scott, at his own specific request, to see Rumph. There is no suggestion that the interrogation was oppressively long or that any form of physical punishment was used. Moreover, Scott had been advised of his constitutional rights. Accordingly, Scott's statements will not be suppressed.

**C.     Conclusion**

Defendant's motion to suppress genuine and counterfeit currency and other personal property (DE 38) and his motion to suppress his statement (DE 39) are DENIED.

SO ORDERED on September 18, 2012.

s/ Joseph S. Van Bokkelen  
Joseph S. Van Bokkelen  
United States District Judge